Daniel Kegan ((PH3732)
Kegan & Kegan, Ltd.
79 W Monroe St #1320
Chicago IL 60603-4969
312-782-6495; Fax 312-782-6494, daniel@keganlaw.com
*Attorneys for Plaintiff, Ptak Bros. Jewelry, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ) | **Case 06-cv-13732 (DC/HP)** |
| **PTAK BROS. JEWELRY, INC.,** ) |  |
| **Plaintiff,** ) | **MOTION AND BRIEF FOR** |
| **v.** ) | **DEFAULT JUDGMENT** |
| **GARY PTAK and G. PTAK, LLC** ) | **BASED ON FED.R.CIV.P.** |
| **Defendants.** ) | **11 AND 37** |
| ) |  |

## CONTENTS

**Motion** ....................................................................................................................... 1
**Facts** ........................................................................................................................... 2
    Pre-Litigation ........................................................................................................ 2
    Early Representation ............................................................................................. 2
    Todd Mohink Representation .............................................................................. 4
    William Stahl Representation ............................................................................... 4
    Willful Misrepresentations ................................................................................. 5
    Improper Filings ................................................................................................. 9
    Electronic Case Filing (ECF) Failures .............................................................. 11
    Discovery Obstruction ........................................................................................ 13
    Defendants' "Say Anything" Tactics ................................................................. 15
    Defendants' Bad Faith........................................................................................ 16
    Summary of Violated Orders and Rules and Some Warnings ........................... 18
**Standards for Sanctions**........................................................................................... 20
**Conclusion** ............................................................................................................... 22
**Authorities** ............................................................................................................... 23
**Certificate of Service** ............................................................................................... 24
**Exhibits** ................................................................................................................... 25
    Declarations
    Transcripts
    Non-West-Printed Cases

## MOTION

    Plaintiff respectfully moves this Court to enter a default judgment against Defendants for their obstructionist discovery tactics, flouting of the Federal Rules of Civil Procedure and the District's Local Rules, multiple willful violations of Court orders, and deceptions presented directly to the Court. Defendants' willful acts, despite multiple warnings, sequestered evidence, unduly increased Plaintiff's expenses, and unnecessarily burdened the Court.

# FACTS

## PRE-LITIGATION

Plaintiff, Ptak Bros. Jewelry, Inc. (PBJI) acquired the intellectual property assets of Ptak Bros., Inc. (PB) at a New York State Court ordered liquidating auction in August 2004 (Dok-13: 4, Preliminary Injunction Memorandum Decision 29May07, "PI").[1] *Kaye v Ptak Brothers, Inc.*, (Supreme Court NY, NYCounty, 102578/03, Filed 30May2003). Defendant Gary Ptak was the losing bidder in the auction despite offering $305,000. Id. At the time of the auction announcement, Gary Ptak was operating a jewelry business under the name Custom Jewelry Shop, LLC. Id. at 5. Defendants then changed the name to G. Ptak, LLC, used the PTAK trademark, and traded on the goodwill of Plaintiff (Ex. 22; PI 6-9)[2]. Despite several demands by Plaintiff to cease and desist, Defendants continued their infringing conduct. PI 6-7.

## EARLY REPRESENTATION

Plaintiff filed this action in early December 2006; Defendants' counsel Trachtenberg, Rodes & Freeberg, filed an Answer on January 22, 2007 (Dok-9). On February 2, 2007, Plaintiff moved for preliminary injunction (Dok-10). An Order for Preliminary Injunction was entered on June 22, 2007 (Dok-15; *Ptak Bros Jewelry, Inc. v Ptak,* 83 USPQ2d 1519 (SD NY 2007); "the PI Order"). The PI Order allowed Defendants twenty days for full compliance, until July 12, 2007.

---

[1] Decn= Declaration; Dok-nn: p= Case Docket-number: page; Ex= Exhibit; Ltr= Letter with Ct= the Court, Judge Denny Chin, DK= Daniel Kegan, GP= Gary Ptak, JM= John Mugno, TM= Todd Mohink, WS= William Stahl; PI p= Preliminary Injunction decision. Tr p:ln= Transcript page:line.
[2] Mr. Ptak falsely declared "My competing business did not begin until Ptak Bros. Inc. had dissolved," Dok-32, ¶ 7. However, G. Ptak, LLC was established in 2003, under the name Custom Jewelry Shop, LLC, until the PTAK trademarks and goodwill were sold August 2004 to Plaintiff (Ex 29; Dok-13: 4). Limited documents provided by third party former accountant Finesco show G. Ptak, LLC had significant income from at least 2003 (Kegan Decn ¶ 15).

On June 29, 2007, Trachtenberg Rodes requested leave to withdraw based on Defendants' claims of financial hardship (Dok-16).[3]  This Court granted withdrawal on July 10, 2007, but noted (Dok-16):

> **G. Ptak LLC must be represented by counsel. Gary Ptak cannot represent G. Ptak LLC because he is not a lawyer; G. Ptak LLC is hereby granted 30 days, or until __August 8, 2007__, to obtain counsel; if counsel does not appear for G. Ptak LLC by then, a default judgment will be entered against it.**

On July 12, 2007, the exact deadline for compliance with the PI Order, Mr. Ptak wrote to Judge Chin requesting a conference stating he was "in need of clarification" on the PI Order (Ex 57-12July07). The Court scheduled an August 17, 2007 conference.

On August 8, 2007, the exact deadline for G. Ptak LLC to file an appearance by counsel, Plaintiff's Chicago counsel, Daniel L. Kegan, received a telephone call from attorney Jon Heller, who stated he had been retained by G. Ptak LLC and was seeking a one-week postponement of the August 17, 2007 conference (Kegan Decn ¶12).

On August 10, 2007, the Court ordered Mr. Heller to properly file an appearance if default were to be avoided (Dok-17):

> **[T]he Court received a faxed letter from John Heller, Esq. purporting to appear on behalf of G. Ptak L.L.C. The letter, however, is insufficient, as Mr. Heller should file a formal notice of appearance …**
>
> **It is hereby ordered that Mr. Heller shall file a notice of appearance by August 14, 2007. If he fails to do so, G. Ptak L.L.C. will be deemed to be in default.**

A "notation" Order of August 13, 2007, in response to a request by Mr. Ptak to be provided yet another week to obtain counsel for the LLC after Mr. Heller "withdrew," approved Mr. Ptak's request with the notation "**FINAL**" (Dok-18).

The Court issued another Order on August 15, 2007 stating "**[t]he conference scheduled for 8/17/07 will proceed whether Mr. Ptak has a new lawyer or not**" (Dok-20).  In response to this Order, another purported counsel, Justin Zeller "appeared"—and disappeared—in a single

---

[3] Just ten days earlier, Defendants had signed a one-year contract with a product placement agency for $48,000, plus expenses. (Ex 44,45).

day (17Aug07 Tr 1:8-15; Dok-21).[4] At the conference, during which only Gary Ptak appeared for Defendants, the Court found Defendants were breaching the PI Order (17Aug07 Tr 12:8-14:5).

### TODD MOHINK REPRESENTATION

Todd K. Mohink advised the court that he was representing Defendant G. Ptak, LLC on August 31, 2007 (Ex 57-31Aug07). Mr. Mohink was admitted *pro hac vice* on September 13, 2007 (Dok-24). On February 20, 2008, the Court strongly suggested LLC counsel represent both Defendants, and Mr. Mohink was to advise the Court "in the next few days" whether Mr. Ptak individually would consent to being represented by Mr. Mohink (Tr 3:1; 11:9-10). Seven weeks later, on April 7, 2008, Mr. Mohink wrote to the Court that he was representing both Defendants (Ex 57-8Apr08). Mr. Mohink has never made an appearance via the ECF system, as he was required to do and promised to do on numerous occasions. As detailed below, his representation was a sham. Plaintiff shows below that Mr. Mohink materially misled the Court, even during the June 13, 2008 hearing, with Mr. Ptak collaborating by his silence.

### WILLIAM STAHL REPRESENTATION

On June 9, 2008, William Stahl faxed the Court that "[t]his letter serves to formally enter my appearance to the Court and request that I be substituted as counsel to replace Todd Mohink for both Defendants" (Ex 57-9Jun08). The Court had previously advised Defendants in its August 10, 2007 Order that a faxed letter was not a proper ECF appearance by counsel (Dok-17).

Mr. Stahl failed to advise the Court he was "delinquent" in his New York State Bar registration status when he appeared at the June 13, 2008 conference. (Ex 49, 13Jun08 Tr 25:25 - 27:9). Mr. Stahl was previously admonished in New Jersey on June 22, 2004 for entering a court appearance on behalf of clients during a period when he had been ineligible to practice law by reason of non-payment of the annual assessment (Ex 50,

---

[4] Mr. Zeller at least appeared and withdrew by appropriately using the ECF system.

<www.cjnj.org/html/sanctions/2004DR20.pdf> 10Jun08). Respondent Stahl also failed to maintain an attorney trust and business account in New Jersey as required by court rules. Id. Mr. Stahl is not presently attorney for the Defendants since he is not admitted to the Southern District and is not in good standing [Tr 26:13 - 27:9].

## WILLFUL MISREPRESENTATIONS

Despite representations made by Mr. Mohink during the June 13, 2008 hearing, Gary Ptak has clearly been serving as counsel for both Defendants, while violating numerous Court Orders and rules. These violations delayed even the limited discovery Defendants produced. Plaintiff's counsel had to evaluate the (lack of) merit of Defendants' proposed counterclaims—twice. New counsel shows up just as something is due, causing delay. At the August 8, 2007 deadline, Mr. Heller "appeared" (Dok-17).  On the eve of the Defendants' depositions, Mr. Stahl surfaced, appearing to be admitted in New York (Ex 58-2Jun08 WS Ltr DK; 58-3Jun08 JM Ltr Ct; Kegan Decn ¶14).

Mr. Mohink told the Court on June 13, 2008 that he drafted the original Counterclaim Papers in January 2008 and the Supplemental Counterclaims Papers lodged in April 2008 (Tr 9:23 -10:16; 18:15-23). However, it strongly appears these nearly identical versions were instead drafted by Gary Ptak. It was Gary Ptak—not Todd Mohink—who informed Plaintiff's counsel, Daniel Kegan on December 21, 2007 of this potential filing (Ex 58-21Dec08; Kegan Decn ¶ 13). The first paragraph of the (Proposed) First Amended Answer was explicitly filed by Gary Ptak "through his individual capacity and in conjunction with G. Ptak LLC" (Dok-31, -33/Ex A). The Motion to Request Leave states that Gary Ptak "along with authorization from Mr. Mohink on behalf G. Ptak LLC" seek leave to file a First Amended Answer  (Dok-31 p. 2, ¶ II(4)). John Mugno wrote on January 9, 2008 of these inconsistencies to the Court and to Mr. Mohink, reminding him of Rule 11's signature requirement (Ex 57; Ex 58); Mr. Mohink made no reply. Defendants' papers certainly appear not to have been written by an attorney (13Jun08 Tr 13:1-3). If Mr. Mohink prepared the Counterclaim Papers, he should have filed them himself.

Mr. Mohink's June13th explanation for his signature, authorship, and Maryland associate's service of the Counterclaim Papers is impeached by his own May 7th letter to the Court (Ex 57):

> **It is with reckless disregard that Mr. Kegan questions the authenticity of my signature, and alleges that I did not physically 'mail' the pleadings, because they had a New York post-mark. It is unnecessary and inappropriate to address the allegations specifically due to attorney-client privilege.**

Mr. Mohink's June 13th explanation is incredible. Defendants have been on notice since April that Plaintiff questioned the Mohink signatures for the April 2008 Counterclaim Papers (Dok-40 28Apr08 DLK Ltr Ct at 2-3). Yet with two months to prepare, upon questioning by the Court, Mr. Mohink initially could not definitely say a signature was his (Tr at 4:16-23), then said he believed it was his signature (Id at :25). After Judge Chin left the Courtroom seeking the presumed clean originals, and after Mr. Ptak and Mr. Mohink further discussed the pending question, off record, Mr. Mohink changed his story; now it was "an attempt" at Mr. Mohink's signature, allegedly by one of Mr. Mohink's two unnamed attorneys in Maryland authorized to mail the papers (Tr at 6:8-24).

However, the April 18, 2008 Counterclaim Papers were not mailed from Maryland, a fact noted in Plaintiff's April 28, 2008 letter to the Court (Dok-40: Ltr at 2). Although the papers appear to bear the signature of Defendants' counsel Todd Mohink, the meter stamp shows that these papers were mailed from Defendant's hometown, Mamaroneck NY 10543, not near Defendants' attorney's office, Glen Burnie MD 21061 (Ex 51 and immediately below, resized; Mugno Decn ¶ 3-4).



Meter Stamps from Exhibit 51 a&b (NY) & 52 (MD): 11 Feb 2008, 18 April 2008; 23 June 08



Exhibit 51 Resized, Service Envelopes from NY, 11 February 2008 and 18 April 2008



Exhibit 52 Resized, Envelope from MD 23 June 2008

The April papers were mailed from Mamaroneck NY, not Maryland. Id. The April papers were mailed via Media Mail, not First Class Mail (as the service certificate states). Id. The envelope was hand addressed by Gary Ptak, not by anyone from Mr. Mohink's office: compare the similar handwriting of the April 18th envelope with the handwriting of the February 11, 2008 envelope, sent by Mr. Ptak to serve the denied Order to Show Cause regarding Plaintiff's seeking evidence of LA-SPCA selling Defendants' jewelry under the PTAK trademark. Id. The handwriting is the same; the

postage meter number is the same, 016H16212220; the originating postage meter zip code is the same, 10543. Id. Contrast with the computer-printed address label, printed return address, and quite different postage meter stamp of the Maryland envelope, Ex 52

To avoid a default judgment against the LLC defendant, Todd Mohink appeared as counsel for the LLC on September 13, 2007 (Dok-24). Had Mr. Mohink written the motion, brief, proposed counterclaims, and associated January and April 2008 papers, there was no lawful purpose served by having these papers filed by Gary Ptak (cf. Ex 58-21Dec07 DK Ltr GP). Instead, Mr. Ptak knowingly permitted misrepresentation to be presented to the Court.

Apparently Defendants and counsel mislead the Court on June 13, 2008[5]. Both Mr. Mohink and Mr. Ptak knew that Gary Ptak had (at least) "served" the April 18, 2008 papers. Had Mr. Ptak any concern with Mr. Mohink's fabrications, Mr. Ptak could have asked for a break to again confer with his counsel (Mr. Ptak and/or Mr. Stahl), Mr. Ptak could have spoken to the Court, Mr. Ptak could have requested a brief *in camera* discussion with the Court. Consistent with Defendants' prevarications documented in Plaintiff's briefs for preliminary injunction (Dok-10, -12 at 2, "Gary Ptak's sworn statements in his Declaration are false…or deceptively selective").

The Court warned Mr. Ptak many times he could not represent his LLC Defendant (e.g.., "it appears to me that Mr. Ptak, who is not a lawyer, seems to be representing the defendants, when we have a lawyer, Mr. Mohink, now appearing on behalf of Ptak, LLC," 20Feb08 Tr 2: 12-14; 17Aug07 Tr 3:22- -4:5; Dok-16-18, -41).

---

[5] A lawyer shall not knowingly make a false statement of law or fact. NY DR 7-102(A)(5). A lawyer shall not conceal or knowingly fail to disclose that which the lawyer is required by law to reveal. Id. 7-102(A)(3). A lawyer shall not knowingly use perjured testimony or false evidence. Id 7-102(A)(4). A lawyer should present any admissible evidence the client desires to have presented unless the lawyer knows, or from facts within the lawyer's knowledge should know, that such testimony or evidence is false, fraudulent, or perjured. NY EC 7-26. Disclosure to the court to avoid assisting a client's fraud may be required under NY DR 7-102(A)(3).
< http://www.law.cornell.edu/ethics/ny/narr/>. Maryland ethics are similar, e.g., R. 3.1 Meritorious Claims and Contentions; R. 3.3 Candor Toward the Tribunal; R. 3.4 Fairness to Opposing Party and Counsel; <http://www.law.cornell.edu/ethics/md/code/MD_CODE.HTM>.

Defendants have a long history of deception, even when writing directly to the Court. Defendants had represented to the Court that they had no business presence in New York City (Ex 57-12May08):

> Astonishingly, Plaintiff insists that Gary Ptak has diverted business away from them. …In fact, Gary Ptak, LLC does not even have a presence in New York City. … Gary Ptak, LLC does not have access to the majority of Plaintiff's business. He has not pursued this market.

However, to Defendants' product placement public relations firm, Defendants readily identified specific New York City retailers with whom they do business (Ex 53).

Mr. Mohink's legal representation has been a sham. Both attorneys and *pro se* parties are bound by Rule 11. The improper filings and letters under Mr. Mohink's signature, the violation of Court orders, the withheld discovery, the cancelled depositions and inspection (see below), all were with Mr. Ptak's knowledge, condonation, compliance, and causation.


## IMPROPER FILINGS

Regardless of who drafted the Counterclaims Papers, these pleadings violated Rule 11 requirements, as acknowledged by the Defendants (13Jun08 Tr, passim). The June 13, 2008 conference mainly focused on the improper proposed Counterclaims. Upon questioning by the Court, Mr. Mohink, admitted that Defendants had submitted claims and defenses not warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law, nor for establishing new law. Id. Defendants submitted a Ninth Amendment defense, but counsel admitted he did not know what the Ninth Amendment says (Tr. 13: 24-14:3):

> **THE COURT: Do you know what the Ninth Amendment says?**
> **MR. MOHINK: I have no idea, your Honor.**
> **THE COURT: Did you research the Ninth Amendment before you put this into the proposed answer?**
> **MR. MOHINK: I did not, your Honor.**

Defendants submitted a count for infliction of emotional, economic, and physical distress, but counsel admitted he knew of no legal theory to support it (Tr 17:3- 18:14):

> **THE COURT:** Did you research law on intentional infliction of economic distress?
> **MR. MOHINK:** I do not believe that I did, your Honor.
> **THE COURT:** Is there such a cause of action under New York law?
> **MR. MOHINK:** I'm going to assume that there was not.
> **THE COURT:** Did you look to see whether there was such a cause of action before you asserted it in your answer, which you signed and submitted to this Court?
> **MR. MOHINK:** I believe that the only thing I did research, your Honor, was the intentional infliction of emotional distress.
> **THE COURT:** Do you have a good-faith basis for asserting a counterclaim for something you call intentional infliction of economic and physical distress?
> **MR. MOHINK:** No, your Honor.

Defendants submitted a count for antitrust violations, but counsel could not inform the Court of any asserted antitrust violation (Tr 14:14 -15:1):

> **THE COURT:** There is a counterclaim for antitrust violations.
> **MOHINK:** Yes, your Honor.
> **THE COURT:** Did you research the antitrust laws before you asserted this antitrust counterclaim?
> **MR. MOHINK:** I did, your Honor, to the best of my ability researched case law on this, and also read what we in Maryland call Hornbooks.
> **THE COURT:** I think we call them Hornbooks here in New York, too, but what is the antitrust counterclaim that you are asserting here?
> **MR. MOHINK:** You know what, your Honor, I would have to look into that, but I'm happy to do that for you.

Todd Mohink informed the Court that Defendants' legal theory for the count, "providing the Court materially false and misleading statements of fact," was based on an asserted Rule 11 violation. However, Rule 11 is not a basis for a counterclaim (Tr 15:25 -17:2):

> **THE COURT:** You have a counterclaim in the vicinity of paragraph 207 that is entitled "counterclaim" for providing this Court with materially false and misleading statements of facts.
> **MR. MOHINK:** Yes, your Honor.
> **THE COURT:** What's the legal theory there?
> **MR. MOHINK:** The legal theory, your Honor, is that the facts which were presented to the Court not only in the pleadings, but also in the various language back and forth that you have received has been a violation of Rule 11, and that under the good faith requirements of the Court, that those facts were not properly placed before the Court, nor were they properly authenticated in terms of their presentation.
> **THE COURT:** So the legal authority for this counterclaim is Rule 11?
> **MR. MOHINK:** That would be my understanding, your Honor, when I say that referencing the good faith element --
> **THE COURT:** Can you as a matter of law assert a counterclaim for a violation of Rule 11?

> **MR. MOHINK:** I think that you can use it to ask the Court for sanctions, your Honor, and that's it. ...
> **THE COURT:** Why is this here, then?
> **MR. MOHINK:** Because I didn't do it properly, your Honor.

The Court also determined that Todd Mohink's certificate of service for the April 18, 2008 motion for amended complaint was inaccurate (even if it had been mailed by an associate in Maryland, and ignoring slower media mail rather than first class postage) (Tr 8:11 -9:8):

> **THE COURT:** Did you serve the brief by first class mail?
> **MR. MOHINK:** Are you asking if I put it in the envelope, your Honor?
> **THE COURT:** I'm reading your words. Quote: "I served defendant's brief...on the following counsel of record by first class mail." Is that a true statement?
> **MR. MOHINK:** If you're asking if I put it in the envelope, no. If you're asking if my office --
> **THE COURT:** I don't know, they're your words. "I served." What does that mean?
> **MR. MOHINK:** I understand, your Honor, in my practice, and I understand that I have never practiced before you, although I have reviewed your local rules. In my practice, your Honor, I was never aware that I was required to put the document into the envelope.
> **THE COURT:** No. I didn't say that, did I? I'm not saying that's a requirement. I'm just looking at your words. Usually I would think a lawyer would say I caused to be served or something, but when you say I served in first class mail, that tells me in plain English that you put it into the mailbox.
> **MR. MOHINK:** Then that is an error, your Honor.

Mr. Mohink could neither support the asserted counterclaims nor even identify his signature because he likely did not write these papers—Mr. Ptak did. However, both he and Mr. Ptak knew that if they admitted this fact the LLC would likely be defaulted.

### ELECTRONIC CASE FILING (ECF) FAILURES

The day the Complaint in this instant case was filed, the case was designated ECF (Dok 4Dec06). Documents filed in ECF cases must be filed electronically and will not be accepted in paper form, unless authorized ("Welcome to the Southern District of New York," <www1.nysd.uscourts.gov/index.php> 15Jun08). A *pro hac vice* applicant "must apply for an ECF password on-line" (Instructions for Admission *Pro Hac Vice* by Written Motion, ¶ B, <http://www1.nysd.uscourts.gov/pro_hac.php> 15Jun08). Unless excused by the Court, attorneys

not already Filing Users appearing in cases assigned to the ECF system must register as Filing Users forthwith upon the case being so designated (Electronic Case Filing Rules ¶ 2.1, SD NY).

During the *nine months* Mr. Mohink represented a Defendant in this case he *never* registered for ECF; *none* of his filings were by ECF (Dok. passim). After the Court ordered Mr. Mohink to file motions electronically via ECF (as required by Court rules), Mr. Mohink often advised the Court and Plaintiff's counsel that he would file an electronic appearance on behalf of Gary Ptak (Dok-41). In his last correspondence to the Court, on June 4, 2008, he noted "I have received the 'ECF' application, and am currently working on getting an account ASAP" (Ex 57). Yet Mr. Mohink had already, on June 2, informed Plaintiff counsel he "was withdrawing" (not seeking leave to withdraw, but withdrawing) and had authorized Mr. Stahl (unadmitted, not in good standing) to assume Defendants' representation (Ex 58-2Jun08/4:10 & 5:16pm; Kegan Decn ¶¶ 13-14).

Mr. Mohink never intended to file an ECF application since Mr. Stahl asserts that he was "retained" by the Defendants on May 28, 2008.[6] Mr. Stahl also never "appeared" electronically, although he represented to the Court June 13th he was taking over Defendants' representation (Tr 2:11-12).

Defendant's avoidance of electronic filings permitted false certificates of service,[7] the use of slow Media Mail, additional burden on the Clerk's office, material delays in the Court's docket, multiple prejudices to Plaintiff, and a host of other difficulties. Even Judge Chin acknowledged that he had written on an original brief due to Defendants' avoidance of ECF (Tr 5:-22). Avoiding ECF filings camouflaged Gary Ptak acting as counsel for G. Ptak LLC since he, when *pro se*, was exempt from electronic filings (Dok-34).

---

[6] As the Court noted, practicing law in New York without being in good standing is most questionable (13Jun08 Tr 31:2-14).
[7] Along with the problems of the Certificate of Service regarding the April 2008 Supplemental Motion for Leave, Mr. Mugno has received documents by hand that reference service by mail. Mr. Kegan never received certain papers on which the certificate indicated he had been served. Again, it

## DISCOVERY OBSTRUCTION

Plaintiff served its First Discovery requests to Defendant Gary Ptak on September 6, 2007, shortly after the Court opened discovery (12Aug07 Tr 20:7-11). On November 5, 2007, Plaintiff moved to compel discovery responses from Gary Ptak (Dok-27), who had provided no response. Defendants withheld producing any documents, asserting a lack of a Protective Order, despite Plaintiff's written willingness to treat all documents as attorneys' eyes only until a Protective Order was entered (e.g., Ex 58-27Feb08 DK Ltr TM).

In response to Plaintiff's Motion to Compel, the Court on February 1, 2008 ordered (Dok-35):

> **To the extent that Mr. Ptak makes objections based on confidentiality, that objection is overruled once a protective order is issued. …Once the Court issues a protective order, within five days Mr. Ptak must produce the documents he has been withholding on these grounds.**

A Protective Order was entered on February 29, 2008 (Dok-37). After waiting the five days allotted by the February 1, 2008 Order, Mr. Kegan contacted Mr. Mohink; Mr. Mohink told Mr. Kegan that Defendants would deliver responsive documents by March 21, 2008 (Ex 58-14Mar08). Mr. Mohink also stated that he would file a formal appearance on behalf of Gary Ptak during the week of March 17-21. Id. Mr. Mohink neither produced documents nor made a formal appearance on behalf of Gary Ptak, so Mr. Mugno wrote to Judge Chin on March 24, 2008. (Ex 57). After receiving no response from Mr. Mohink, Mr. Mugno wrote to the Court again on April 2, 2008. (Ex 57).

In a misdated April 8, 2008 letter (actually April 7, 2008), Mr. Mohink wrote to the Court stating that discovery had been put in a "holding pattern" due to health concerns for newborn, Addison Ptak, and that "Mr. Ptak is simply unable at this time to properly focus on his Defense, and assisting counsel with important litigation issues such as discovery" (Ex 58). Plaintiff immediately responded in an April 7, 2008 letter from Mr. Mugno by forwarding published

---

appears Mr. Ptak, not Mr. Mohink was effectuating service, with a simulation of Mr. Mohink's signature.

photographs from the week before depicting Mr. Ptak exhibiting at a trade show. (Ex 58). The Court on April 11, 2008 then ordered (Dok-39):

> **IT IS HEREBY ORDERED that defendants shall produce any and all responsive documents by April 18, 2008. Defendants shall also provide proper and complete responses to any outstanding interrogatories by April 18, 2008. If they fail to comply with the above directives, judgment will be entered against them on default.**

In response, Defendant Gary Ptak produced heavily redacted documents and non-responsive interrogatory answers, and continued to withhold many relevant documents (Ex 58-6May08). In addition to several other improper objections, Defendants chose for their limited response an arbitrarily shortened time period, consistent with Defendants' false claim that they were not in business before April 20, 2004

To partially remedy Defendants' failures to produce, Plaintiff attempted to obtain central financial documents from third party Herman & Co CPAs, Defendants' current accountant (Dok-45). Defendants submitted (non-ECF) on May 23, 2008 a Motion to Quash the subpoena based on the documents purportedly not being required to be produced based on the Protective Order (Dok-41). Defendants had delayed producing documents for many months awaiting entry of a formal Protective Order, despite Plaintiff's counsel's written commitment to treat all produced documents on an attorneys' eyes only pending a protective order (Ex 57-27Feb08). Remarkably, once a Protective Order had been entered, Defendants disingenuously argued that the very same Protective Order justified withholding and redacting documents (Dok-42).

Reaffirming its February 1, 2008 order, the Court on June 2, 2008 ordered (Dok-42):

> **Defendants argue that the subpoena seeks certain information that is "Trade Secret/Commercially Sensitive" material. Even if the requested materials are properly classified as such, this is not a basis for quashing the subpoena. The materials are still subject to production, in accordance with the Protective Order entered in this case. The motion to quash is denied.**

Despite these clear rulings from the Court, Mr. Stahl's June 9, 2008 letter to Judge Chin states that he has instructed Mr. Ptak to provide all discovery materials so long as such materials "are not privileged or the subject of a protective order" (Ex 58). Mr. Stahl, who asserted he was retained on May 28, 2008, ignored the Court's clear June 2, 2008 Order even while enabling Defendants'

violations. In any case, Plaintiff has received no further documents from Defendants. Belated compliance with discovery orders does not preclude the imposition of sanctions. *Henry v Gill Industries, Inc.*, 983 F2d 943,947 (9th Cir. 1993).

On May 1 and 2, 2008, Plaintiff properly served on Defendants notices of depositions and property inspection (Ex 46-48). Mr. Mugno's June 3, 2008 correspondence to the Court and the attachments evidence Defendants' improper tactics in canceling the discovery (Ex 57). Counsel Stahl's last-minute canceling the depositions equates to a failure to appear, warranting Rule 37 sanctions. *Henry v Gill Industries, Inc.*, 983 F2d at 947. Mr. Mohink's unjustifiable refusal to attend more than one deposition again reflects his sham representation, and likewise equates to a failure to appear, warranting Rule 37 sanctions. Id. An unreasonable refusal to be deposed warrants sanctions. Id.

### DEFENDANTS' "SAY ANYTHING" TACTICS

Throughout this litigation, Defendants have adopted a "say anything" strategy that delays and thwarts Plaintiff's preparation for trial, sequesters evidence, and runs the clock on discovery, preventing Plaintiff followup time. *Payne v Exxon Corp.*, 121 F3d 503 (9th Cir. 1997) (evasive and dilatory tactics, repeated failure to produce documents warrant default). This strategy typically invoked a request to extend just at an ordered deadline. Some examples of such improper tactics are both above and below.

The Court instructed Mr. Ptak on August 17, 2007 that if he wished to proceed individually as a *pro se* defendant, he would still be required to comply with the Court's rules and he "obviously would be better off with a lawyer, a good lawyer who knows what he or she is doing" (Tr 4:1 -5:9). The Court also specifically advised Mr. Ptak that he could not represent the LLC (Tr 4:3-7), Mr. Ptak willfully chose to proceed *pro se* for months, although there would have been virtually no incremental cost for an attorney to represent both Defendants. Only months later, after Plaintiff brought additional violations to the Court's attention, did Mr. Ptak permit Mr. Mohink to *say* he would represent both Defendants. However, Mr. Mohink *never* filed an appearance for Mr.

Ptak. Instead, when an attorney would actually have to *do* something for Defendants, Mr. Mohink suddenly claimed he could not attend a second deposition day, not even citing any earlier scheduled court conflict, and having even the first deposition cancelled by Defendants' self-appointed substitute counsel, Mr. Stahl.

Mr. Ptak continued to break rules by filing discovery responses with the Court, filing ambiguous joint motions, and mailing the April 2008 Counterclaim Papers under the name of counsel Todd Mohink. Mr. Ptak filed the January 2008 Counterclaim Papers, which embedded elements of a motion to dismiss, despite the Court's December 13, 2007 Order that it was too late to file a Motion to Dismiss (Dok-29).

Mr. Mohink told the Court the Counterclaim Papers were based on a draft provided by Trachtenberg Rodes. However, Defendants' justified the need to amend their answer by claiming Trachtenberg Rodes overlooked those very proposed counterclaims and additional affirmative defenses (Dok-31: 1; 18Apr08 Supplemental Motion at 1).

The format of the document (including the pagination, fonts, etc) strongly suggests the "draft" from Trachtenberg Rodes consisted solely of the January 2007 Answer and Defenses. The insupportable language of the Counterclaims was provided by Mr. Mohink—or, more likely, Gary Ptak. Defendants have consistently sought to excuse their rule and order violations by claiming poverty and ignorance of trademark law (e.g., Ex 58-12May08). However, those claiming poverty are no less able to tell the truth; Rules 11, 37 and basic discovery are not trademark specific.

## DEFENDANTS' BAD FAITH

Defendants assert financial restraints, yet refuse to provide discovery-requested, court-ordered financial information. Defendants blamed financial restraints for discharging their first appearing law firm, Trackenberg Rodes (Dok-16), yet the month before discharge Defendants bought over forty-nine thousand dollars of product placement services from public relations firm, Goldstein Communications (Ex 44,45). Mr. Ptak phoned Plaintiff counsel Daniel Kegan on February 6, 2008 requesting to "put everything on hold" because "I have a business to run and

attending to [Plaintiff] is not my top priority" (Tr 9:6-8; Kegan Decn ¶16) (*Henry v Gill Industries, Inc*., 983 F2d 943 (9th Cir. 1993) (plaintiff's failure to comply with orders not excused by attending to business nor delay in retaining counsel; excuses offered either legally irrelevant or factually implausible; case dismissed with prejudice).

Responding during that February 6, 2008 call, to Plaintiff's concern that *National Jeweler* published Defendant's product-placed article with an inherently confusing headline, "Ptak introduces eco-conscious collection," Mr. Ptak said it was "not his responsibility, that's out of my hand," and was only "a minor detail" (Ex 56; Kegan Decn ¶16; Cf. PI ¶A(i)&(vi)). Violation of the Court's PI Order is not a minor detail.

Defendant built his own jewelry business by trading on the goodwill of Ptak Bros., Inc., goodwill that belonged after the August 2004 Ozer liquidation auction to Plaintiff Ptak Brothers Jewelry, Inc. During that critical transition, Defendants advertised their business phone number with the PTAK mnemonic, which had been displayed on the Ptak Bros. catalogs since at least 1996 (17Aug07 Tr 6:22-24; Dok-10/Ex 17). Defendants covertly ordered Verizon telephone company in September 2004 to redirect the Ptak Bros., Inc. fax number for customer orders (800-PTAK-FAX) to the location of their new company (Dok-10: 6). After customers were lured and diverted to Defendant's business, with parallel website deceptions that "For over 60 years it has been my family's tradition to offer superior quality and service to compliment our extensive collection of styles. …[N]othing makes me more proud than to continue this tradition with an altogether improved operation" and that "Gary Ptak LLC remains the only Ptak-family owned and operated jewelry manufacturing firm in existence today," (Dok-10:9-10), much damage to Plaintiff was already done.

Defendants' conversion of Plaintiff's fax telephone number and posing as the continuation of Ptak Bros. prompted this lawsuit. Even after the Court issued its PI Order, Defendants continued in breach. When Plaintiff discovered that the SPCA in New Orleans was selling Defendant's jewelry under Plaintiff's PTAK trademark, rather than seeking to stop the infringement, Defendants lodged a motion to show cause (Ex 55; 20Feb08 Tr 2:8-9).

The Court warned Defendants and counsel Mohink many times that the Court's rules must be followed. Despite the Court's clear instructions and orders to Defendants, both Mr. Ptak and Mr. Mohink violated rules and the Court's clear orders.

### SUMMARY OF VIOLATED ORDERS AND RULES AND SOME WARNINGS

| Date | Order/ Rule/ Statement | Violation |
|------|------------------------|-----------|
| 4 Dec 06 | Pro *hac* attorney register for ECF | Todd Mohink, never done |
| ECF ¶2.1 | File papers ECF | Todd Mohink, never done |
| 10 July 07 | LLC represented by Counsel by 8Aug07, or else default. [1st warning] | Long history, presently no counsel. |
| 10 Aug 07 | Heller appear by 14Aug07, or else default. [2nd warning]<br><br>Faxed letter not proper ECF counsel appearance. | One day appearance, withdrawal.<br><br>Todd Mohink never ECF appear.<br><br>William Stahl never ECF appear. |
| 13 Aug 07 | After Heller "withdrew," FINAL extension for LLC counsel. [3rd warning] | |
| 17 Aug 07 | Judge Chin recommends Gary Ptak utilize Court's pro se office and manual [Tr 21:9] | |
| 17 Aug 07 | There is a court order, agree with it or not, you are required to comply. [Tr 5:8; Warning] | |
| 17 Aug 07 | Using PTAK names, trademarks, except "Gary Ptak" conditionally permitted. PI(A)(i) | Marketing rings under PTAK as trademark [Tr 12:8-14:5] |
| 17 Aug 07 | Gary Ptak admonished, as pro se, still required to comply with rules. [4th warning] | |
| 13 Dec 07 | Too late for motion to dismiss | Issue included in Jan08 Counterclaim Papers |
| 4 Jan 08 | Gary Ptak, with Todd Mohink "authorization," proposed Counterclaim Papers | FRCP 11(b): unwarranted by existing law, no evidentiary support, unwarranted denials, unnecessary delay caused and needless increase in cost of litigation; False certifications. |
| 18 Jan 08 | Gary Ptak/ Todd Mohink proposed Counterclaim Papers | Gary Ptak submitted for both Defendants; other defects then not |

| | Counterclaim Papers | needed be addressed |
|---|---|---|
| 1 Feb 08 | Gary Ptak produce documents withheld on confidentiality grounds within 5 days of protective order entry | Never produced |
| 1 Feb 08 | Objections based on confidentiality are overruled once a protective order is issued [29Feb08] | Confidentiality objections made in Supplemental Discovery Response (Apr08), Motion to Quash (May08; Dok-42), Stahl (9Jun08). |
| 20 Feb 08 | Mr. Ptak, who is not a lawyer, seems to be representing the defendants; this is circumventing our rules….I will not permit him to seek any relief or take any action on behalf of the LLC. [Tr 2:12-17; 3:11-15; 6:12-14; 7:3-8; 12:7-13; 16:4-8; 17:8] | I am going to strictly enforce the requirement that Ptak LLC be represented by a lawyer. [Tr 7:1-3] |
| 11 Apr 08 | Defendants produce any and all responsive documents and provide proper and complete responses to any outstanding interrogatories by 18Apr08; if they fail to comply judgment will be entered against them on default. [5th warning] | Many relevant documents still withheld, interrogatory responses remain improper and incomplete; false mailing certificates; violation of ECF rules. |
| 18 Apr 08 | Todd Mohink proposed Counterclaim Papers | FRCP 11(b): unwarranted by existing law, no evidentiary support, unwarranted denials, unnecessary delay caused and needless increase in cost of litigation; False certifications. |
| 18 Apr 08 | Ninth Amendment counterclaim | R. 11(b) |
| 18 Apr 08 | Antitrust counterclaim | R. 11(b) |
| 18 Apr 08 | Conversion counterclaim | R. 11(b) |
| 18 Apr 08 | Rule 11 counterclaim | R. 11(b) |
| 18 Apr 08 | Intentional infliction of economic and physical distress counterclaim | R. 11(b) |
| 18 Apr 08 | Service certificate asserting *Todd Mohink* served papers by first class mail | NY DR 7-102(A); R. 11(b) |
| 12 May 08 | "Gary Ptak, LLC does not even have a presence in New York City." Cf,. Goldstein's "Do you retail anywhere within NYC?" Gary Ptak provides retailers names. | R. 11(b) |
| 28 May 08 | Todd Mohink to file appearance for Gary Ptak. | Never done |

| | | |
|---|---|---|
| 2 Jun 08 | | Todd Mohink abandons representation; unadmitted William Stahl cancel depositions. |
| 4 Jun 08 | May 1 noticed inspection, R.34 | Failure to permit noticed inspection |
| 2 Jun 08 | May 1 noticed deposition, R. 30(b)(1) | Failure to appear for noticed deposition, Gary Ptak |
| 2 Jun 08 | May 2 noticed deposition. R. 30(b)(6) | Failure to appear for noticed deposition, G Ptak LLC |
| 9 Jun 08 | File papers ECF, ECF ¶2.1 | William Stahl never done; fax "appearance" to Judge Chin. |
| 13 Jun 08 | Counsel need be in good standing, admitted to SD NY | William Stahl neither |
| 13 Jun 08 | Todd Mohink assert service certificate signed by his Maryland attorney, envelope evidence shows mailed by Gary Ptak, NY | False statement to Court |
| 13 Jun 08 | Gary Ptak conspire with Todd Mohink, silently condone fabrication | Fed.R.Evid 801(a)(2) |
| 6 Feb 08 | *Henry v Gill* | Discovery delays for Defendants higher priority, regular business. |

## STANDARDS FOR SANCTIONS

A litigant's "callous disregard of responsibilities [that] counsel owe to the Court and to their opponents" supports a default judgment. *National Hockey League v Metropolitan Hockey Club,* 427 US 639 (1976). Failing to perform after being expressly directed to perform an act by a date certain exemplifies sanctionable flagrant bad faith. Id. at 641. Failure to obey a court order, especially after being warned that failure could result in sanctions, supports a default judgment. Id.

at 427. Failure to file discovery responses on time, compounded by responses which ultimately were filed being grossly inadequate supports a default judgment. Id. at 642.

Sanctions serve a threefold purpose. *Cine Forty-Second St. Theatre Corp. v Allied Artists Pictures Corp.*, 602 F2d 1062, 1066 (2nd Cir. 1979). First, they may ensure that a party will not be able to profit from its own failure to comply. Id. at 1066. Rule 37 strictures are also specific deterrents and, like civil contempt, they seek to secure compliance with the particular order at hand. Id. Finally, courts are free to consider the general deterrent effect their orders may have on the instant case and on other litigation, provided that the party on whom they are imposed is, in some sense, at fault. Id. The most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent. Id. at 643.

Federal district courts have the inherent power to manage their business to achieve orderly and expeditious disposition of cases. *Lafleur v Teen Help,* 342 F3d 1145 (10th Cir. 2003). A district court undoubtedly has discretion to sanction a party for failing to prosecute or defend a case, or for failing to comply with local or federal procedural rules. Id. at 1151; *Alvarez v Simmons Market Research Bureau, Inc.,* 839 F2d 930 (2nd Cir. 1988); *Harding v Federal Reserve Bank of New York,* 707 F2d 46 (2nd Cir. 1983).

Representation by counsel in violation of local rule and court order is sanctionable. *Lafleur v Teen Help,* 342 F3d at 1149-50. Dilatory tactics and evading relevant discovery well justifies defaulting a party, since such is contrary to the public interest in expeditious completion of litigation, interferes with the sensible management of the court's docket, and prejudices the other party. *Payne v Exxon Corp.,* 121 F3d 503, 506 (9th Cir. 1997). Even if there were also some accidental violation, willful violation of rules and court orders supports default. *Rodgers v Curators of University of Missouri,* 135 F3d 1216 (8th Cir. 1998). Willfully changing counsel four times, thereby delaying discovery and trial, where the Court ordered after the third no further withdrawal or the case would be dismissed, is sanctionable. *Rodgers v Curators of University of Missouri,* 135

F3d 1216, 1221 (8th Cir. 1998). *All* of defendants conduct may properly be considered in ordering a default judgment. *Henry v Gill Industries, Inc*., 983 F2d 943, 947 (9th Cir. 1993).

Both a conscious disregard of court orders and gross negligence amounting to a total dereliction of professional responsibility are properly embraced within the "fault" component of the Supreme Court's criteria for default sanctions. Id. at 1067. The principal objective of the general deterrent policy of *National Hockey* is strict adherence to the "responsibilities counsel owe to the Court and to their opponents." Id. at 1067, quoting 427 U.S. at 640. Negligent, no less than intentional, wrongs are fit subjects for general deterrence. *Cine Forty-Second Street* at 1067. Gross professional incompetence, no less than deliberate tactical intransigence, may be responsible for the interminable delays and costs that plague modern complex lawsuits. Id. at 1067. The parties, and particularly their lawyers, must rise to the freedom granted by the Rules and cooperate in good faith both in question and response. Id. at 1068.[8]

If parties are allowed to flout their obligations, choosing to wait to make a response until a trial court has lost patience with them, the effect will be to embroil trial judges in day-to-day supervision of discovery, a result directly contrary to the overall scheme of the federal discovery rules. Id. A party's hopelessly belated compliance, if such occurs, should not be accorded great weight; any other conclusion would encourage dilatory tactics, and compliance with discovery orders would come only when the backs of counsel and the litigants were against the wall. Id.

A litigant chooses counsel at his peril. Id. Courts should not shrink from imposing harsh sanctions where they are clearly warranted. Id. Especially where a court considers a litigants' culpability on the record, the client is liable for the acts and omissions of his counsel. *Lafeur v Teen Help,* 342 F3d 1145 (10th Cir. 2003). Counsel's disregard of his or her professional responsibilities can lead to extinction of the client's defense. *Cine Forty-Second St*. at 1068. Where the sins of counsel are with the client's knowledge, condonation, compliance, or causation, strong sanctions are clearly proper. Id. at 1069 (J. Oakes, concurring).

---

[8] Defendants exchanged "plaintiff" and "defendant" terms, serving Plaintiff's discovery request back to Plaintiff, despite the resultant illogic and irrelevance of most of the resultant questions.

When a party fails to comply with a discovery order, a court may "render a judgment by default against the disobedient party," Fed.R.Civ.P. 37(b)(2)(A)(iv). Rule 11 mandates that for every pleading, written motion, or other paper an attorney or unrepresented party presents to the court, the claims, defenses, and other legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law; that the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and that the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information. When, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Id. 11(c)(1).

## CONCLUSION

Defendants' and counsel's continuing deceitful actions throughout this case more than warrant dismissal. A party "who flouts discovery orders does so at his peril," *Sieck v Russo,* 869 F2d 131 (2nd 1989). When a party flaunts Court warnings, rules, and orders to "follow its own-determined path," occupies itself primarily with "building roadblocks" to Plaintiff's discovery efforts to bring the case ready for trial, and fabricates shifting stories attempting to justify its willful path, then the ultimate sanction is fully warranted. *Artmark-Chicago, Ltd. v E. Mishan & Sons, Inc.,* 26 USPQ2d 1201 (ND IL 1992) (answer struck, defendant precluded from introducing evidence, plaintiff granted all reasonable inferences against defendant, reasonable fees with interest awarded). Any lesser sanction would be ineffective, involving further delay and encouraging in other cases dishonesty. *Rodgers v Curators,* 135 F3d at 1222. Mr. Mohink should be jointly and severally liable with Defendants for Mr. Mohink's period of representation, September 6, 2007 through June 13, 2008 (Dok-23, -43).

Wherefore, Plaintiff requests the Court:

A. Find that Defendants' violations of orders and rules were willful, burdened the Court, and harmed Plaintiff;

B. Enter a default against Defendants and in favor of Plaintiff by striking the Answer; and

C. Provide such other relief as is just and proper against Defendants an their present and past counsel.


27 June 2008                                  Respectfully submitted,

_s/daniel kegan/_____       _____
Daniel L. Kegan (PH3732)             John R Mugno (JM 2231)
Kegan & Kegan, Ltd.                      LAW OFFICES OF JOHN R. MUGNO
79 W Monroe #1320                       350 Broadway - 10th Floor
Chicago IL 60603-4969                  New York NY 10013
Phone: 312-782-6495 x21             Phone: 212-925-3474
Fax: 312-782-6494                        Fax: 212-925-3665
*Attorneys for Plaintiff*                   *Attorneys for Plaintiff*
*PTAK BROS. JEWELRY, INC.*       *PTAK BROS. JEWELRY, INC.*

## AUTHORITIES

*Alvarez v Simmons Market Research Bureau, Inc.,* 839 F2d 930 (2nd Cir. 1988).

*Artmark-Chicago Ltd. v E. Mishan & Sons, Inc.,* 26 USPQ2d 1201 (ND IL 1992).

*Cine Forty-Second St. Theatre Corp. v Allied Artists Pictures Corp.,* 602 F2d 1062 (2nd Cir. 1979).

*Harding v Federal Reserve Bank of New York,* 707 F2d 46 (2nd Cir. 1983).

*Henry v Gill Industries, Inc.,* 983 F2d 943 (9th Cir. 1993).

*Kaye v Ptak Brothers, Inc.,* (Supreme Court NY, NY County, 102578/03, Filed 30May2003).

*Lafleur v Teen Help,* 342 F3d 1145 (10th Cir. 2003).

*National Hockey League v Metropolitan Hockey Club,* 427 US 639 (1976).

*Ptak Bros. Jewelry, Inc. v Ptak,* 83 USPQ2d 1519 (SD NY 2007) [Case Docket-13, -15].

*Payne v Exxon Corp.,* 121 F3d 503 (9th Cir. 1997).

*Sieck v Russo,* 869 F2d 131 (2nd Cir. 1989).

Fed.R.Civ.P. 11, 34.

New York Code of Professional Responsibility, DR 7-102.

SD NY Website, home page, "Welcome."

SD NY Instructions for Admission *Pro Hac Vice* by Written Motion, ¶ B.

SD NY Electronic Case Filing Rules, ¶ 2.1.

Maryland Lawyer's Rules of Professional Conduct, R. 3.1, 3.3, 3.4.

**CERTIFICATE OF SERVICE.** I certify that this correspondence is being deposited with FedEx today, fees prepaid, addressed to Defendants, at **Gary Ptak**, 180 E Prospect Ave, Mamaroneck NY 10543, and to Defendants' agent, **William N Stahl**, 450 7th Ave #1308, New York NY 10123, on the below date. 27 June 2008                    Signed _s/daniel kegan/_____

## EXHIBITS

### EXHIBITS

| | | |
|---|---|---|
| PX 22 | NY Secretary of State record for Gary Ptak's business, Initial filing date | 3 Apr 2002 |
| PX 29 | NY State Custom Jewelry Shop LLC Name Change | Aug 2008 |
| PX 44 | Goldstein Communications Product Placement Contract | June 2007 |
| PX 45 | Goldstein Account Statement for Gary Ptak | 1 June 2008 |
| PX 46 | Property Inspection Notice 34(a)(2) to Defendants | 1 May 2008 |
| PX 47 | Rescheduled Deposition Notice 30(b)(1): Gary Ptak | 1 May 2008 |
| PX 48 | Deposition Notice 30(b)(6): G Ptak LC | 1 May 2008 |
| PX 49 | William Stahl Delinquent with New York State Unified Court System | Jun 2008 |
| PX 50 | William Stahl Admonished, New Jersey Courts | 22 Jun 2004 |
| PX 51 | Defendants NY Service Envelopes | 11 Feb & 18 Apr 2008 |
| PX 52 | Defendants MD Service Envelope | 23 June 2008 |
| PX 53 | Gary Ptak Retail Presence in New York City | 16 Oct 2007 |
| PX 55 | SPCA-LA Ptak [Defendant] Jewelry Webpage | Feb 2008 |
| PX 56 | *National Jeweler* Ptak [Defendant] Introduces eco-conscious collection" | Feb 2008 |
| PX 57 | Letters to Court | |
| PX 58 | Letters Between Counsel/Pro Se Defendant | |

### Declarations

| | |
|---|---|
| Dunay Declaration, Goldstein Records Custodian | 29 May 2008 |
| Mugno June 2008 Declaration | 26 Jun 2008 |
| Kegan June 2008 Declaration | 27 June 2008 |

### Transcripts (for Court Courtesy Copy)

| | |
|---|---|
| Court Proceedings, Robing Room | 17 Aug 2007 |
| Court Proceedings, Robing Room | 20 Feb 2008 |
| Court Proceedings | 13 June 2008 |

### Non-West-Printed Cases

*Artmark-Chicago Ltd*. v *E. Mishan & Sons, Inc*., 26 USPQ2d 1201 (ND IL 1992).